UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| |
|---|
| CHRIS DOWLING, on behalf of himself and all others similarly situated, |
| *Plaintiff*, |
| v. |
| QUEENS BALLPARK COMPANY, L.L.C. and DOES 1-10, |
| *Defendants*. |

Case No. 1:24-cv-07092-KAM-VMS

(REDACTED)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT QUEENS BALLPARK COMPANY, L.L.C.'S
## <u>MOTION TO DISMISS</u>

HUNTON ANDREWS KURTH LLP

Shawn Patrick Regan
Sarah F. Spellman
200 Park Avenue, 52nd Floor
New York, NY 10166
(212) 309-1046
sregan@hunton.com
sspellman@hunton.com

Neil K. Gilman (admitted *pro hac vice*)
Nicholas S. Drews (admitted *pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1674
ngilman@hunton.com
ndrews@hunton.com

*Attorneys for Defendant*
*Queens Ballpark Company, L.L.C.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

III.    STANDARD OF REVIEW ....................................................................................... 3

IV.     ARGUMENT ............................................................................................................ 4

        1.      **The Complaint Fails to State a Claim for a Violation of New York City
                Biometric Identifier Information Protection Code § 22-1202(b)** ...................... 4

        2.      **Plaintiff's Unjust Enrichment Claim Is Preempted and, In Any Event,
                Fails on the Merits** ............................................................................................. 8

        3.      **Plaintiff's Claim Under New York General Business Law § 349 Fails** .......... 11

V.      CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................ 3, 4, 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................................ 3, 4, 14

*Chufen Chen v. Dunkin' Brands, Inc.,*
954 F.3d 492 (2d Cir. 2020) ............................................................................................ 12, 13

*Columbia Mem'l Hosp. v. Hinds,*
38 N.Y.3d 253 (N.Y. 2022) ............................................................................................... 10

*E.J. Brooks Co. v. Cambridge Sec. Seals,*
31 N.Y.3d 441 (N.Y. 2018) ............................................................................................... 10

*Gross v. Madison Square Garden Ent. Corp.,*
2024 WL 103235 (S.D.N.Y. Jan. 9, 2024) ............................................................... 1, 8, 9, 11

*Gross v. Madison Square Garden Ent. Corp.,*
2024 WL 2055343 (S.D.N.Y. May 7, 2024) ................................................................ passim

*Hampton v. Guare,*
195 A.D.2d 366 (1st Dep't 1993) ....................................................................................... 9

*In re Platinum & Palladium Antitrust Litig.,*
No. 1:14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ............................. 10

*Izquierdo v. Panera Bread Co.,*
450 F.Supp.3d 453 (S.D.N.Y. 2020) .................................................................................. 12

*Koch v. Acker, Merrall & Condit Co.,*
18 N.Y.3d 940 (2012) ....................................................................................................... 12

*Koenig v. Boulder Brands, Inc.,*
995 F.Supp.2d 274 (S.D.N.Y. 2014) .................................................................................. 12

*Krupnik v. NBC Universal, Inc.,*
No. 103249/10, 2010 WL 9013658 (Sup. Ct. N.Y. Co. June 29, 2010) ................................ 9

*Myskina v. Conde Nast Publ'n, Inc.,*
386 F. Supp. 2d 409 (S.D.N.Y. 2005) ................................................................................. 9

*Nakamura v. Fujii,*
253 A.D.2d 387 (1st Dep't 1998) ....................................................................................... 10

*Pelkowski v. Hovermann*,
No. 20-CV-1845-ENV-RLM, 2021 WL 9032222 (E.D.N.Y. Sept. 9, 2021)............................ 9

*People v. Smith*,
139 A.D.3d 131 (1st Dep't 2016) ...................................................................... 4

*Pro Bono Invs., Inc. v. Gerry*,
No. 03 CIV. 4347 (JGK), 2005 WL 2429777 (S.D.N.Y. Sept. 30, 2005)............................. 10

*Rosenberg v. Triborough Bridge & Tunnel Auth.*,
No. 19-CV-10478 (ALC), 2021 WL 980744 (S.D.N.Y. Mar. 16, 2021) .................................. 4

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013)............................................................................. 3

*Sandoval v. Uphold HQ Inc.*,
2024 WL 1313826 (S.D.N.Y. March 27, 2024) ....................................... 12, 13, 14

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1st Dep't 2004) ........................................................................ 14

*Sokoloff v. Town Sports Int'l, Inc.*,
6 A.D.3d 185 (1st Dep't 2004) ........................................................................ 14

*Stephano v. News Grp. Pub., Inc.*,
64 N.Y.2d 174 (1984) ..................................................................................... 9

*Stutman v. Chem. Bank*,
95 N.Y.2d 24 (2000) ....................................................................................... 12

*Wilson v. Veritas Consulting Grp. Inc.*,
No. 21-CV-8318 (JPO), 2022 WL 4227145 (S.D.N.Y. Sept. 13, 2022) .................................. 9

*Yuille v. Uphold HQ Inc.*,
686 F.Supp.3d 323 (S.D.N.Y. 2023)................................................................... 14

*Zoll v. Ruder Finn, Inc.*,
No. 01 Civ. 1339 (CSH), 2004 WL 42260 (S.D.N.Y. Jan. 7, 2004) ........................................ 8

**Statutes**

N.Y. Civ. Rights Law §§ 50, 51 .......................................................... 8, 9, 10

New York General Business Law § 349 ........................................................ passim

**Rules**

Fed. R. Civ. P. 8(a)(2)....................................................................................... 3, 4

Fed. R. Civ. P. 11(b)(3)...........................................................................................5

Federal Rule Civ. P. 12(b)(6)...........................................................................1, 3, 5

**Other Authorities**

N.Y.C. Admin. Code § 22-1202(b).........................................................................1, 4

Defendant Queens Ballpark Company, L.L.C. ("QBC" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Corrected Amended Complaint (ECF No. 12) (the "Complaint"), pursuant to Federal Rule Civ. P. 12(b)(6).

## I.       INTRODUCTION

Last year, Judge Lewis Kaplan of the Southern District of New York dismissed claims against Madison Square Garden ("MSG") that are virtually identical to Plaintiff's here, brought by some of the very same attorneys originally involved here, relating to MSG's use of facial recognition technology. *See Gross v. Madison Square Garden Ent. Corp.*, 2024 WL 2055343, at *1-2 (S.D.N.Y. May 7, 2024) ("*Gross*") (granting defendant's motion to dismiss in full). As here, the plaintiff in *Gross* alleged that MSG's collection and use of biometric information violated the New York City Biometric Identifier Information Protection Code (N.Y.C. Admin. Code § 22-1202(b) ("NYC Biometrics Law") and that MSG was unjustly enriched as a result. *Id.* at *1.

Judge Kaplan granted in full MSG's motion to dismiss. *Id*. (dismissing claim for failure to allege a violation of N.Y.C. Admin. Code § 22-1202(b) and adopting Magistrate Judge's recommendation for dismissal of unjust enrichment claim); *see also Gross v. Madison Square Garden Ent. Corp.*, 2024 WL 103235, at *9 (S.D.N.Y. Jan. 9, 2024) (recommending dismissal of plaintiff's unjust enrichment claim as preempted under New York Civil Rights Law and for failure to state a claim), *report and recommendation adopted in relevant part*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024). Plaintiff's counsel elected not to appeal. Instead, one of those counsel chose to sue another iconic New York City sporting and entertainment venue, apparently hoping that a different judge across the East River will ignore Judge Kaplan's well-reasoned and plainly correct decision. This case, too, must be dismissed for the same reasons.

Judge Kaplan concluded that plaintiff's theory — indistinguishable from the theory alleged here — "defies common sense." *Id.* As in *Gross*, Plaintiff's theory here under the NYC Biometric Law is flatly inconsistent with the statute, which prohibits only the sale or other similar transaction of biometric information, not its use. Likewise, again as the court held in *Gross,* Plaintiff's unjust enrichment claim is preempted by the New York Civil Rights Law and fails on the merits because QBC was not enriched at Plaintiff's expense. Finally, Plaintiff's claim under New York General Business Law § 349 also fails as a matter of law, because (i) Plaintiff cannot plausibly claim to have been deceived by his lack of written consent when his Complaint establishes that QBC's use of facial recognition technology was plainly known, (ii) there is no legal requirement to obtain "written consent" and (iii) the Complaint alleges no actual harm.

Plaintiff's Complaint should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

Citi Field is the home of Major League Baseball's New York Mets franchise. Compl. ¶ 2. Each year, hundreds of thousands of people attend Mets games, concerts, and other live events at Citi Field. Compl. ¶ 11, 47. To ensure the safety and security of Citi Field patrons, QBC uses facial recognition technology to identify and deny admission to individuals who have been banned from Citi Field, for example, due to prior misconduct at the venue such as violence or theft. Compl. ¶ 34. This technology enables Citi Field security personnel to locate such individuals promptly and discreetly, confirm their identities, and hand the matter over to local law enforcement if necessary. Compl. ¶ 34. Citi Field's use of this technology has been publicly known since at least 2018, and the cameras are clearly visible throughout the venue. Compl. ¶¶ 34, 35.

Plaintiff Chris Dowling alleges that he attended at least four Mets games at Citi Field over the year prior to filing his suit. Compl. ¶ 7. Plaintiff does not allege that he was erroneously

identified as an individual ineligible for admission to Citi Field, nor does he allege that he was refused admission, removed or otherwise prohibited from attending the games. Plaintiff's Complaint asserts that QBC uses facial recognition technology "to save on security costs and to be able to charge a premium baked into event ticket prices with respect to security." Compl. ¶ 45. However, and crucial for purposes of this Motion, Plaintiff does not plausibly allege that QBC has sold or otherwise transacted his biometric data to anyone.

### III.     STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), Plaintiff's Complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly,* 550 U.S. at 570. "In addressing the sufficiency of a complaint," the Court must "accept as true all factual allegations and draw from them all reasonable inferences," but it must not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citing *Twombly*, 550 U.S. at 557).

Unless a plaintiff "nudges [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Twombly*, 550 U.S. at 570. This "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," and determine whether a Complaint's factual allegations meet the burden of demonstrating "more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679. Unless the factual allegations, if true, would be sufficient to show "'that the pleader is entitled to relief'"

the claim must be dismissed.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)); *Twombly,* 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.").

## IV.     ARGUMENT

**1.      The Complaint Fails to State a Claim for a Violation of New York City Biometric Identifier Information Protection Code § 22-1202(b)**.

Plaintiff's NYC Biometrics Law claim is based on Section 22-1202(b), which provides:

> It shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information.

N.Y.C. Admin. Code § 22-1202(b).

Critically, the NYC Biometrics Law is not a blanket prohibition on commercial collection and use of biometric data.  In fact, it is the opposite.  The law plainly *permits* the use, collection and retention of biometric data — which includes facial recognition technology — by commercial establishments.  *Id*. § 22-1202(a)[1]; *see Gross*, 2024 WL 2055343, at *1 ("Section 22-1202(b) does not prohibit companies from receiving any benefit … from the sharing of biometric data.").  And, as evident from its plain language, Section 22-1202(b) only "makes it unlawful for companies to '*profit from* the *transaction* [of biometric data] itself.'"  *Gross*, 2024 WL 2055343, at *1 (quoting § 22-1202(b)); *see also Rosenberg v. Triborough Bridge & Tunnel Auth.*, No. 19-CV-10478 (ALC), 2021 WL 980744, at *2 (S.D.N.Y. Mar. 16, 2021) ("When interpreting a statute, a court should first turn to the plain meaning of the statute."); *People v. Smith*, 139 A.D.3d 131, 135 (1st Dep't 2016) ("As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof[.]").

---

[1]  Plaintiff does not allege a violation of N.Y.C. Admin. Code § 22-1202(a).  Nor can he.

While Plaintiff asserts bald legal conclusions parroting the statute — *i.e.*, that QBC "shared, sold, leased, and/or traded biometric identifier information with third parties," Compl. ¶ 59, and that Defendants "illegally sell, lease, trade, and/or share biometric identifier information for value or otherwise profit" [sic], *id.* ¶ 3 — the Complaint fails to allege *facts* that, if true would support a finding that QBC profited "from the transaction" of biometric data. Plaintiff's Complaint includes the factual allegations that QBC "shared images with a third party, possibly Genetec [Inc.], to process Plaintiff and Class members' facial biometric data upon entry into Citi Field[,]" Compl. ¶ 45, but conspicuously (and fatally) is missing any claim that QBC shared biometric data "***in exchange for***" money or something else "of value." *Cf.* § 22-1202(b) (prohibiting sharing "in exchange for" value).[2]

---

[2] Like in *Gross*, Plaintiff's claim fails as a matter of law and must be dismissed on this ground (*i.e.*, that the Complaint does not allege facts that, if true, are sufficient to plausibly show QBC transacted biometric information "*in exchange for*" money or something else of value from a third-party). There is no allegation that QBC received any compensation from a vendor or third-party with whom QBC shared or transacted biometric information.

Moreover, while not necessary for resolution of this motion, Plaintiff's claim also would ultimately fail for the additional reason that Plaintiff could not, consistent with the obligations under Rule 11, continue to advocate that biometric data was even "shared" (nor "sold, leased and/or traded") with a third party as alleged in paragraph 45 of the Complaint. *See* Comp. ¶ 45 (alleging QBC "shared images with a third party, possibly Genetec [Inc.], to process Plaintiff and Class members' facial biometric data upon entry into Citi Field[,]"). ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ If the case were to proceed, QBC would file a motion under Rule 11(b)(3) on the ground that Plaintiff cannot continue to allege, after an inquiry reasonable under the circumstances, that the factual contention in paragraph 45 has, or will likely have, evidentiary support. Fed. R. Civ. P. 11(b)(3). In the interests of judicial economy and preserving party and Court resources, QBC has not presented that motion at this time, but reserves the right to do so in the event the case were to survive dismissal at the Rule 12 stage.

Instead, Plaintiff posits that QBC "profits from" the "use" of biometric data in two ways: (i) by realizing "savings on physical security," Compl. ¶¶ 40, 60, and (ii) by allegedly selling tickets at "a premium price because … it includes costs related to this level of security," *id.* ¶¶ 41, 60. But both of those theories fail as a matter of law, for the same reasons that similar theories failed as a matter of law and mandated dismissal at the pleading stage in *Gross*, the only case that has addressed these issues.

In *Gross*, Plaintiffs alleged that MSG used facial recognition technology to exclude from its venues lawyers actively engaged in litigation against MSG, and that MSG thereby profited "by deterring litigation and … reducing MSG's litigation expenses." *Gross*, 2024 WL 2055343, at *1. The court rejected plaintiffs' theory as "inconsistent with the plain text of Section 22-1202(b)." *Id.* Specifically, Judge Kaplan noted that "[t]he 'profit' that plaintiffs allege that [MSG] realizes flow from [MSG's] employment of a broader program, albeit one advanced by biometric data sharing" and that "[t]he biometric sharing at issue here is no different from any other tool for which a company may pay a vendor." *Id.* The court noted that it "defies common sense" to suggest that "a company profits when it *purchases* a product[.]" *Id.*

Judge Kaplan further explained that plaintiffs' argument — alleging any receipt of a benefit from the use of biometric information makes its use unlawful — "renders superfluous [Section 22-1202(a)][,]" which "explicitly *permits* the collection and sharing of biometric data for commercial purposes provided that the public is warned." *Id.* at *1–2. Judge Kaplan found that "[i]f 'profit' were construed to mean *any* benefit, then the only permissible commercial sharing of biometric data would be for applications that are not useful," which "effectively would ban biometric data sharing by companies, thereby rendering Section 12-1202(a) meaningless." *Id.* at *2.

As in *Gross*, Plaintiff's theory of profit is based entirely on how QBC *uses* biometric data. Plaintiff alleges that QBC uses biometric data to enforce its policy of excluding individuals who have previously been banned from Citi Field. Compl. ¶ 34. Plaintiff does not allege that QBC sells biometric information or otherwise receives compensation from a third-party in exchange for sharing patron biometric information. Instead, QBC's alleged profits "flow from [QBC's] employment of a broader program, albeit one advanced by biometric data sharing." *Gross*, 2024 WL 2055343, at *1. As in *Gross*, Plaintiff's suggestion — that QBC illegally "profits from" its purchase of facial recognition technology services when doing so improves security — "defies common sense." *Id.*

Plaintiff's expansive and incorrect "use" theory, if accepted, would prohibit any use of biometric data that provides a benefit to a business, which is why it was flatly rejected by Judge Kaplan. A retail store that uses facial recognition technology systems to prevent shoplifting, for example, would violate the law insofar as it was "profit-motivated" in preventing goods from being stolen, thereby reducing inventory write-offs and costs. As Judge Kaplan noted, because commercial actors of course choose to use such technology to benefit their businesses, Plaintiff's theory would effectively make the use of facial recognition technology and other biometric technologies *per se* illegal, contrary to the plain language of the statute. *See Gross*, 2024 WL 2055343, at *2.

And the legislative history reinforces the statute's plain meaning and makes clear that the law does not prohibit *use* of biometric information, but merely prohibits entities that collect biometric information from providing it to third parties through a sale or an equivalent transaction. For example, the bill summary clearly states that the purpose of the law is to "address[] the increased collection and use of biometric information" by "prohibit[ing] the sale of biometric

identifier information" … "requir[ing] certain commercial establishment … to post signage notifying consumers if they collect biometric identifier information" and providing for a private right of action "for failing to post signage or negligently selling/sharing biometric information." SUMMARY, COMM. ON CONSUMER AFFAIRS AND BUSINESS LICENSING, File No. 1170-2018 (2021), available at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3704369&GUID=070402C0-43F0-47AE-AA6E-DEF06CDF702A (emphasis added); *id.*; *see also* (title of law: "A Local Law … in relation to requiring businesses to notify customers of the use of biometric identifier technology and prohibiting the sale of biometric identifier information"). Indeed, the committee report that Plaintiff cites in his Complaint demonstrates that the statute was intended to address concerns that biometric data "could be collected and sold to third parties for marketing purposes without the consent of consumers" and to establish limitations on such. Compl. ¶ 31 (quoting N.Y.C. City Council, Committee Report 10719 (Oct. 7, 2019)).

2.      **Plaintiff's Unjust Enrichment Claim Is Preempted and, In Any Event, Fails on the Merits**.

Plaintiff's claim of unjust enrichment likewise fails as a matter of law, and must be dismissed, because the New York Civil Rights Law preempts a claim of unjust enrichment. N.Y. Civ. Rights §§ 50, 51; *Gross v. Madison Square Garden Ent. Corp.*, 2024 WL 103235, at *9 (S.D.N.Y. Jan. 9, 2024) (finding plaintiffs' unjust enrichment claim based on defendant's use of facial recognition technology preempted), *report and recommendation adopted in part*, 2024 WL 2055343 (S.D.N.Y. May 7, 2024)[3]; *Zoll v. Ruder Finn, Inc.*, No. 01 Civ. 1339 (CSH), 2004 WL

_____

[3] In *Gross*, Magistrate Judge Cott recommended dismissal of Plaintiffs' unjust enrichment claims based on preemption and on the merits. *See* 2024 WL 2055343, at *1. Plaintiffs did not object to that portion of the report and recommendation, and Judge Kaplan dismissed the claim accordingly.

42260, at *4 (S.D.N.Y. Jan. 7, 2004) (holding the Civil Rights Law "preempts all common law claims based on unauthorized use of name, image, or personality, including unjust enrichment claims"); *Stephano v. News Grp. Pub., Inc.*, 64 N.Y.2d 174, 183 (1984) (explicitly holding the right to privacy, encompassed under the Civil Rights Law, is exclusively statutory in [New York] and is thus preempted); *Wilson v. Veritas Consulting Grp. Inc.*, No. 21-CV-8318 (JPO), 2022 WL 4227145, at *2 (S.D.N.Y. Sept. 13, 2022) (dismissing plaintiff's unjust enrichment claim as preempted by §§ 50 and 51); *Krupnik v. NBC Universal, Inc.*, No. 103249/10, 2010 WL 9013658, at *8 (Sup. Ct. N.Y. Co. June 29, 2010) (dismissing plaintiff's unjust enrichment claim as preempted by Sections 50 and 51 of the Civil Right Law).

Plaintiff's unjust enrichment claim is based on the same set of facts as his NYC Biometrics Law claim — namely QBC's collection and use of his biometric information. Compl. ¶¶ 69–73. But courts have long held that there is no common-law cause of action for misuse of personal images and the only remedy for such a claim is the one created by New York Civil Rights Law §§ 50, 51. *Hampton v. Guare*, 195 A.D.2d 366, 366–67 (1st Dep't 1993) (finding the "preemptive effect of the Civil Rights Law is fatal to the … causes of action of plaintiff's amended complaint alleging … unjust enrichment"). And biometric data like that which is at issue here qualifies as an individual's image or likeness for purposes of preemption under the New York Civil Rights Law. *See Gross*, 2024 WL 103235, at *9 ("Plaintiffs can . . . hardly claim that their biometric data is unlike an image or likeness of them such that it would be immune from preemption."). Because Plaintiff's common law unjust enrichment claim against QBC is preempted, it must be dismissed. *See id.* (dismissing unjust enrichment claim as preempted); *Pelkowski v. Hovermann*, No. 20-CV-1845-ENV-RLM, 2021 WL 9032222, at *10 (E.D.N.Y. Sept. 9, 2021) (same); *Myskina v. Conde Nast Publ'n, Inc.*, 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005) ("Under New York law, common

law unjust enrichment claims for unauthorized use of an image or likeness are subsumed by Sections 50 and 51.").

Even if not preempted, Plaintiff's unjust enrichment claim fails on the merits. To establish a cause of action for unjust enrichment under New York law, a plaintiff "must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." *Nakamura v. Fujii*, 253 A.D.2d 387, 390 (1st Dep't 1998); *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *38 (S.D.N.Y. Mar. 28, 2017) (explaining the benefit must be both "specific" and "direct") (internal citations omitted). An unjust enrichment claim can proceed only when plaintiff plausibly alleges "(1) that the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendants to make restitution." *Pro Bono Invs., Inc. v. Gerry*, No. 03 CIV. 4347 (JGK), 2005 WL 2429777, at *8 (S.D.N.Y. Sept. 30, 2005). The essential inquiry in any action for unjust enrichment is "whether it is against equity and good conscience to permit the defendant to *retain* what is sought to be *recovered*." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 472 (N.Y. 2018); *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (N.Y. 2022) (explaining unjust enrichment claims are rooted in the equitable principle that a person shall not be allowed to enrich themselves unjustly at the expense of another).

Here, Plaintiff fails to allege facts that, if true, would satisfy these elements. Plaintiff asserts in a conclusory fashion that he "would not have purchased tickets to [Citi Field] (or would have paid substantially less for them) if [he] had known [he was] also paying in the form of [his] valuable biometric data" and that QBC was enriched through "sav[ings] on security costs" and price premiums on tickets. Compl. ¶¶ 71–72. But Plaintiff's Complaint does not allege facts that,

if taken as true, would plausibly show that QBC was enriched by collecting Plaintiff's biometric information or that any enrichment was at Plaintiff's expense. *See Gross*, 2024 WL 103235, at *10 ("Plaintiffs claim, for example, that MSG received benefits from plaintiffs in the form of their biometric data . . . but fail to specifically allege how MSG used plaintiffs' biometric data to enrich itself."). Instead, Plaintiff's conclusory allegations "do[] little to help bridge the gaps between [QBC's] collection of [his] biometric data and the alleged—but unsubstantiated—reduction in [QBC's] overall costs and profit increase." *Id.*

Further undermining Plaintiff's unjust enrichment claim, the Complaint makes clear that Plaintiff was not excluded from Citi Field, rather he attended the Mets games for which he purchased tickets. Compl. ¶ 43; *see Gross*, 2024 WL 103235, at *10 (no unjust enrichment where plaintiffs "[d]id not allege that they were removed from the concert venues they attended" and "were able to make full use of the tickets purchased").

Moreover, because QBC's action was expressly permitted by, and consistent with, the NYC Biometrics Law, Plaintiff cannot show that QBC's actions with respect to him were against equity and good conscience. Thus, Plaintiff's claim for unjust enrichment must be dismissed as a matter of law because it is preempted by New York Civil Rights Law and, alternately, because it fails on the merits.

**3.     Plaintiff's Claim Under New York General Business Law § 349 Fails.**

Plaintiff's misbegotten solution to Judge Kaplan's airtight rejection of the claims against MSG is to advance here the spurious idea that using biometric data, as specifically authorized under a New York City law, is somehow illegal under the generic New York State General Business Law § 349 ("GBL § 349"). But this claim fails as well for numerous reasons.

To state a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012).

With respect to the second element of a GBL § 349 claim, materially misleading conduct is that which is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Sandoval v. Uphold HQ Inc.*, 2024 WL 1313826, at *6 (S.D.N.Y. March 27, 2024) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)). "This is an 'objective test' that 'may be determined as a matter of law or fact (as individual cases require).'" *Id.* (granting motion to dismiss GBL § 349 claim) (quoting *Izquierdo v. Panera Bread Co*., 450 F.Supp.3d 453, 461 (S.D.N.Y. 2020) and *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 287 (S.D.N.Y. 2014)). *See also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (affirming dismissal of GBL § 349 claim and holding that "in determining whether a reasonable consumer would have been misled … context is crucial").

Here, Plaintiff's own affirmative allegations make clear that he has not plausibly alleged QBC's use of biometric facial recognition technology was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Sandoval,* 2024 WL 1313826, at *6. As a threshold matter it is important to note that Plaintiff does *not* claim that he was "misled" on the theory that he was *unaware* that QBC collects and uses facial recognition technology. Nor could Plaintiff make such a claim, because the Complaint demonstrates widespread knowledge that biometric facial recognition technology is used at Citi Field and that its use is conspicuous.[4]

---

[4] The Complaint: (i) quotes from the NYC Council's committee report stating that "[a]s early as the early 2000's, facial recognition technology has been on the rise at entertainment venues," Compl. ¶ 31; (ii) acknowledges that "an article about Citi Field in 2018" highlighted that

Instead, the Complaint tries to conjure a claim based on the feeble theory that it is a violation of GBL § 349 to use facial recognition technology "without ***written consent*** …." Compl. ¶ 66 (emphasis added). But "written consent" plainly is not required under Section 22-1202(a). And nor is it plausible to claim that it is deceptive or misleading to not obtain written consent for something known to Plaintiff and others. As the Second Circuit has emphasized in affirming dismissal under GBL § 349, "context is crucial," *Chufen Chen*, 954 F.3d at 501, and Plaintiff cannot plausibly claim to have been deceived by a lack of written consent for a practice plainly known to a reasonable consumer. *Sandoval*, 2024 WL 1313826, at *6 (dismissing claim where facts alleged failed to plausibly show "a reasonable consumer acting reasonably under the circumstances" was "likely to be misled").[5]

Nor can Plaintiff's GBL § 349 claim be saved by reframing it as an omission. As pled, the alleged failure to obtain written consent is not an actionable omission. An omission may be actionable under GBL § 349 only "where a defendant fails to supply a consumer information that it alone possesses, and where that information would be material or important to a reasonable

---

[5] "[f]acial recognition technology is deployed through 11 cameras at the main entrance and faces are checked against a blacklist," *id.* ¶ 34; (iii) describes that cameras conspicuously "can be seen in pairs on the columns of each pillar," pasting a photo of such into the Complaint, *id.* ¶ 35; (iv) alleges Citi Field reportedly has "187 surveillance cameras and 115 doors and card readers," *id.* ¶ 37; and (v) even quotes a Reddit user who wrote, in response to posts, "I thought everyone was [aware of Citi Field's use of facial recognition]? If you look at the iPad screen at the [Citi Field] rotunda gates entrance, you can see it picking up faces like your phone camera does with the box and running the scan, And when the scan triggers something, they halt the line," *id.* ¶ 39 (brackets in Complaint).
   [5] Plaintiff's attempted further gloss — that the absence of his "written consent" left him "unaware of the full breadth of Defendants' conduct, including the use … for profit …." Compl. ¶ 67 — is a non-sequitur that changes nothing. First, it is illogical that providing "written" consent would have inherently augmented Plaintiff's understanding of the purported "full breadth" of QBC's practices. Indeed, Plaintiff does not even allege what facts he did not know or any basis for concluding he would have known them if he'd been required to provide "written consent." Second, as explained above, *see supra*, Section IV(1), QBC does not share the biometric data "for profit." (Explaining such a theory "defies common sense").

consumer and where the consumer could not have reasonably obtained the information other than through the defendant." *Yuille v. Uphold HQ Inc.*, 686 F.Supp.3d 323, 347 (S.D.N.Y. 2023) (dismissing GBL § 349 claim where the plaintiff failed to adequately allege any material information in the defendant's possession). Once again relevant here, the Complaint reflects widespread knowledge that QBC employs facial recognition technology at Citi Field. Certainly, the Complaint does not allege facts that, if true, would show that Plaintiff *lacked* knowledge that QBC uses facial recognition technology. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter ... to 'state a claim for relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A defendant's liability under GBL § 349 depends, in part, on whether plaintiff possessed or could reasonably have obtained the relevant information plaintiff claims the defendant failed to provide. *Sandoval*, 2024 WL 1313826, at *10 (finding plaintiff failed to plead a material misrepresentation for purposes of GBL § 349 where plaintiff failed to adequately allege that defendant "had access to some further information"). Plaintiff's Complaint fails in this respect as well because it has not alleged an actionable omission under GBL § 349.

Finally, Plaintiff's claim fails as a matter of law because the Complaint does not allege an actual injury to him. He merely asserts he received no "benefit" from QBC's use of biometric data. Compl. ¶ 67. *See, e.g.*, *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185, 186 (1st Dep't 2004) (holding no injury alleged where plaintiff "d[id] not claim any kind of monetary loss other than payment of her membership fees" and "d[id] not claim that defendant failed to deliver the services called for in the contract"). A plaintiff must plead an "actual" injury to recover under the statute. *Id*.; *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1st Dep't 2004) (finding plaintiffs' definition of injury flawed where no manifestation of actual harm was alleged and instead plaintiffs

impermissibly pled "deception as injury"). Though Plaintiff asserts in a conclusory fashion the "harm" to him is "significant," he fails to identify what that harm is, much less that it was caused by any discernable misstatement or omission. For all of these reasons, Plaintiff's GBL § 349 claim fails as a matter of law and must be dismissed.

## V. CONCLUSION

For the foregoing reasons, and because any amendment would be futile, the Court should dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

By: _*Shawn Patrick Regan*_

Shawn Patrick Regan
Sarah F. Spellman
Hunton Andrews Kurth LLP
200 Park Avenue, 52nd Floor
New York, NY 10166
(212) 309-1046
sregan@hunton.com
sspellman@hunton.com

Neil K. Gilman (admitted *pro hac vice*)
Nicholas S. Drews (admitted *pro hac vice*)
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
(202) 955-1674
ngilman@hunton.com
ndrews@hunton.com

*Attorneys for Defendant Queens Ballpark Company, L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I caused to be served a true and correct copy of the

foregoing upon all counsel of record, by email:

TO:    Jennifer Czeisler*
jen.czeisler@sterlingtonlaw.com
Edward Ciolko*
edward.ciolko@sterlingtonlaw.com
**STERLINGTON, PLLC**
One World Trade Center
New York, New York 10004
Tel.: 212-433-2995

Blake Hunter Yagman
byagman@shnlegal.com *(Inactive)*
**Leeds Brown Law, P.C.**
One Old Country Road
Ste 347
Carle Place, NY 11514
Tel.: (929) 709-1493

Adam Pollock
Adam@PollockCohen.com
Anna Menkova
Anna@PollockCohen.com
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, NY 10006
Tel.: (212) 337-5361

Albert Fox Cahn
**CAIR-NY**
46-01 20th Avenue
Queens, NY 11105
albert@stopspying.org
Tel.: (646) 665-7599

/s/ *Shawn Patrick Regan*
Shawn Patrick Regan

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the word count of this Memorandum of Law complies with the word count limitation of Rule 7.1(c) of the Local Rules for the Eastern District of New York. In determining compliance, I relied on the word count function of the word processing system used to prepare this document.  The total number of words in this Memorandum, exclusive of the caption, table of contents, table of authorities, and signature block is 5,522 words.

/s/ *Shawn Patrick Regan*
Shawn Patrick Regan