UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS DOWLING on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>QUEENS BALLPARK COMPANY, L.L.C. and DOES 1-10,<br><br>*Defendants*. | Case No.: 1:24 Civ. 07092 (KAM) (VMS) |

**Plaintiff's Memorandum of Law in Opposition to
Defendants' Motion to Dismiss**

POLLOCK COHEN LLP
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361

STERLINGTON, PLLC
530 Fifth Avenue, Suite 804
New York, NY 10036
 (212) 433-2995

Surveillance Technology Oversight
Project (S.T.O.P)
40 Rector Street, 9th Floor
New York, NY 10006

*Counsel for Plaintiff*

# Table of Contents

Preliminary Statement ...................................................................................................1

Statement of Facts ..........................................................................................................2

    I.      Facial Recognition is Valuable Biometric Data............................................2

    II.     Defendants' Use of Facial Recognition at Citi Field ....................................3

    III.    Defendants' Non-Disclosure and Use of Biometrics for Profit.....................3

    IV.    Plaintiff's Experience ...................................................................................4

Argument.........................................................................................................................4

    I.      Plaintiff has stated a plausible claim under § 349.......................................4

          A.     Plaintiff has adequately pled that Defendants' collection of biometric information was "materially misleading." ........................5

          B.     Plaintiff has adequately pled that he has been injured by Defendants' deceptive collection of his biometric information. ........8

    II.     Plaintiff has stated a plausible claim that Defendants have benefitted from the use of Plaintiff and other class members' biometric information and their expense. ..............................................................................10

Conclusion ....................................................................................................................12

## Table of Authorities

**Cases**

*Ault v. J.M. Smucker Co.*,
  2014 WL 1998235 (S.D.N.Y. May 15, 2014) ................................................................. 6

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield, Inc.*,
  448 F.3d 573 (2d Cir. 2006) ............................................................................................ 11

*City of N.Y. v. Smokes-Spirits.Com, Inc.*,
  12 N.Y.3d 616 (2009) ...................................................................................................... 5

*Decoursey v. Murad*,
  LLC, 673 F. Supp. 3d 194 (N.D.N.Y. 2023) ............................................................... 9, 10

*Fero v. Excellus Health Plan, Inc.*,
  236 F. Supp. 3d 735 (W.D.N.Y. 2017) ............................................................................ 6

*Fishon v. Peloton Interactive, Inc.*,
  620 F. Supp. 3d 80 (S.D.N.Y. 2022) ................................................................................ 9

*Fishon v. Peloton Interactive, Inc.*,
  No. 19-cv-11711 (LJL), 2020 U.S. Dist. LEXIS 208861,
  (S.D.N.Y. Nov. 9, 2020) .............................................................................................. 9, 10

*Gross v. Madison Square Garden Entertainment Corporation*,
  No. 23-CV-3380 (LAK) (JLC), 2024 U.S. Dist. LEXIS 4904
  (S.D.N.Y. Jan. 9, 2024). ................................................................................................. 11

*Lake Minnewaska Mt. Houses v. Rekis*,
  259 A.D.2d 797 (3d Dep't 1999) ................................................................................... 12

*Lancaster v. Am. Textile Co., Inc.*,
  719 F. Supp. 3d 204 (N.D.N.Y. 2024) ............................................................................. 9

*Mallouk v. Amazon.com, Inc.*,
  No. C23-852-RSM, 2024 U.S. Dist. LEXIS 130027
  (W.D. Wash. July 23, 2024). .......................................................................................... 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,
  N.A.*, 85 N.Y.2d 20 (1995) .............................................................................................. 6

*Plavin v. Grp. Health Inc.*,
  35 N.Y.3d 1, 124 N.Y.S.3d 5 (2020) ............................................................................... 5

*Sloan v. Anker Innovations Ltd.*,
  711 F. Supp. 3d 946 (N.D. Ill. 2024) ............................................................................... 6

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) .............................................................................................. 8

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24 (2000) ........................................................................................................ 9

*Zurakov v. Register.Com, Inc.,*
  304 A.D.2d 176 (1st Dep't 2003) .................................................................................. 9, 10

**Statutes and Rules**

2021 N.Y.C. Local Law No. 3 ................................................................................................ 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 7

GBL § 349 .................................................................................................................... passim

N.Y. Civil Rights Law .................................................................................................... 4, 10

## Preliminary Statement

At this Court's direction, the parties met and conferred numerous times in an effort to resolve this matter without further litigation. Each time, Defendants' counsel gave a different account of how QBC used the biometric information it collected. For instance, Defendants' counsel said the biometric collection was designed to combat terrorism, then that its only purpose was to ensure fans kicked out for misbehavior would not be allowed back in. After months of meetings and conferrals with Defendants' counsel, how Defendants use the biometric information they collect remains unclear to Plaintiff's counsel. What remains clear, however, is that a reasonable consumer would be confused—even deceived—by Defendants' collection and use of their biometric information.

Plaintiff has raised a plausible claim under GBL § 349. He alleges that Defendants, while deploying facial recognition at Citi Field, withheld material facts uniquely within their possession—namely, that patrons' biometric identifiers would be collected, retained for an indefinite period, and used, for instance, to bar future access—facts a reasonable consumer would want to know before deciding whether and on what terms to purchase tickets. The omission is not just idiosyncratically important to this Plaintiff.

Regulators have squarely found that, without express disclosure, the average consumer would not know of biometric collection and use; and on-site camera visibility—the only "notice" Defendants invoke—does not avert harm when most tickets are bought online. Plaintiff's allegations as to the materiality of Defendants' omission raises a classic fact question and not one for resolution at this stage.

Plaintiff has likewise stated a plausible claim for unjust enrichment, since he has pled that Defendants received a financial benefit from their use of facial recognition, since it allowed them to reduce security costs at the expense of visitors, who paid for security monetarily when buying tickets to Citi Field and with their valuable biometric information.

**Statement of Facts**

Plaintiff Chris Dowling is a New York citizen who attended at least four New York Mets games at Citi Field within one year of filing the complaint. Corrected Amended Class Action Complaint, Dkt. No. 12 ("FAC") ¶¶ 6–7. Citi Field is a commercial entertainment venue located in New York City that provides entertainment services as a professional sports and concert stadium. FAC ¶ 2. Defendant Queens Ballpark Company, L.L.C. ("QBC") is associated with the New York Mets, who own and control Citi Field, and uses facial recognition on fans who attend events there. FAC ¶¶ 8–9.

## I. Facial Recognition is Valuable Biometric Data

As alleged, biometric identifiers such as scans of facial geometry are unique, cannot be changed or deleted, and have significant intrinsic value. FAC ¶¶ 14–16, 21–22, 24–26. As a result, both Federal and state regulators have taken action to protect biometric information and address privacy rights. For instance, the Federal Trade Commission has warned that undisclosed collection and use of biometric information can pose serious risks to consumers and may constitute unfair practices when not clearly disclosed or when access to goods or services is conditioned on providing such information. FAC ¶¶ 27–28. Similarly, in 2021, the New York City Council enacted

Local Law 3 to address privacy risks associated with biometric technologies, including facial recognition, particularly in entertainment venues. FAC ¶¶ 30–32.

## II. Defendants' Use of Facial Recognition at Citi Field

Defendants collect biometric identifiers at Citi Field, including through facial recognition technology. FAC ¶¶ 2–4, 33–36. As described in a 2018 account, facial recognition was deployed through cameras at the main fan entrance to compare faces against a "Do Not Admit" blacklist, with security and NYPD involvement when a match was detected. FAC ¶ 34. Citi Field also monitors 187 surveillance cameras and 115 doors and card readers through the Genetec Command Center platform, with data stored locally on Citi Field's systems. FAC ¶ 37.

Visitors have publicly recounted learning—only upon interaction with security—that Citi Field was using facial recognition and that bans could be enforced based on those scans. One attendee reported being told by a supervisor that facial recognition started in 2022 and was in "full effect" in 2023; another described lines halting when scans triggered the system and being repeatedly required to remove a hat to ensure the success of the facial scan. FAC ¶¶ 38–39.

## III. Defendants' Non-Disclosure and Use of Biometrics for Profit

Plaintiff alleges Defendants previously failed to disclose their collection, retention, conversion, storage, and sharing of facial templates and other biometric identifiers, while selling, leasing, trading, sharing for value, or otherwise profiting from biometric identifier information. FAC ¶¶ 3–4. Defendants profit from these behaviors in multiple ways: (1) by reducing labor and other costs through biometric surveillance in lieu of more expensive "analog" security; and (2) by embedding a security "price

premium" into ticket prices that fans pay, without disclosure that the premium includes the surreptitious collection and use of their biometric data. FAC ¶¶ 4, 40–42.

## IV. Plaintiff's Experience

Plaintiff attended at least four Mets games at Citi Field within the past year before this action. FAC ¶ 43. During those visits, Defendants collected Plaintiff's biometric identifiers as he entered the stadium, without disclosing that collection, and compared his facial biometric data against a blacklist. FAC ¶¶ 44–45. Plaintiff alleges that Defendants also shared images with a third party (possibly Genetec) to process facial biometric data upon entry, and did so for profit by saving on security costs and charging a premium in ticket prices. FAC ¶ 37, 45. Plaintiff and class members were thereby harmed by the undisclosed collection and monetization of their biometric information. FAC ¶ 46.

## Argument[1]

## I. Plaintiff has stated a plausible claim under § 349.

Plaintiff has stated a claim that Defendants violated GBL § 349 by collecting, storing, and using his biometric information and that of members of the proposed class. Section 349 of New York's General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). Plaintiffs have a cause of action under the law where a defendant is engaged in consumer-oriented conduct that is materially

---

[1] Upon careful consideration, Plaintiff has decided to dismiss Count I of his complaint which alleged Defendants violated the New York Civil Rights Law. The undersigned counsel reached out to Defendants' counsel to seek a stipulation of dismissal of that count, but Defendants did not agree. Accordingly, Plaintiff filed a notice of dismissal of that count. ECF No. 35.

misleading and materially injured them. *See Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 10, 124 N.Y.S.3d 5, 9 (2020).

Plaintiff has adequately pled all elements of his § 349 claim. It is undisputed that Defendants were engaged in consumer-oriented conduct. In addition, Plaintiff has alleged Defendants' conduct was materially misleading since a reasonable consumer would not have known Defendants were using facial recognition technology at all, let alone storing visitors' biometric data and using it to bar fans from returning to Citi Field under some circumstances. Plaintiff has alleged actual injury from Defendants' deceptive conduct by arguing that he by would not have purchased tickets if he knew he was subsidizing the cost of Defendants' facial recognition technology or if he knew that attending an event at Citi Field would entail the unauthorized collection of his biometric information.

### A. <u>Plaintiff has adequately pled that Defendants' collection of biometric information was "materially misleading."</u>

There is no dispute that Plaintiff's claim satisfies the first element of GBL § 349 since QBC was engaged in "consumer-oriented conduct." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009). Plaintiff has also sufficiently alleged that Defendants' affirmative acts and omissions were "materially misleading," the second element of a GBL § 349 claim, *id.*, since a reasonable consumer would not have assumed that Defendants were (i) using facial recognition technology; (ii) storing biometric data for an indefinite period; and (iii) using biometric data to bar visitors from returning to Citi Field, FAC ¶¶ 4, 38–39, 41–45.

"[D]eceptive acts and practices . . . are those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). "Claims based on omissions are cognizable where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 775 (W.D.N.Y. 2017) (internal quotation marks omitted). "Whether a particular act or practice is deceptive is usually a factual question." *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 775 (W.D.N.Y. 2017); *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) (what a "reasonable" consumer would have understood is a matter of fact not appropriate for decision on a motion to dismiss).

Courts applying GBL § 349 have declined to dismiss claims based on allegations that a company misrepresented its data collection practices, including those related to facial recognition technology. In *Sloan v. Anker Innovations Ltd.*, the court declined to dismiss claims that a company's statements about the manner in which it conducts and stores data from facial recognition were materially misleading under GBL § 349 and other states' analogous consumer protection laws. 711 F. Supp. 3d 946, 963 (N.D. Ill. 2024). Likewise in *Fero*, the court declined to dismiss GBL § 349 based on allegations that a company materially misled consumers by representing that it "would maintain adequate data privacy and security practices and procedures to safeguard [personally identifiable information] from unauthorized disclosure, release, data breaches, and cyber attack." 236 F. Supp. 3d at 770. For the *Fero* court, it was "at least plausible" that these representations "would lead a reasonable consumer to believe that the . . . Defendants were providing more adequate data security than they purportedly were." *Id.* at 776.

Plaintiff's allegations that Defendants made a material omission in not disclosing their use of facial recognition technology is, equally, "at least plausible"—and that is sufficient at this stage. Defendants' conclusory argument that their use of facial recognition technology is "something known to Plaintiff and others" is unfounded and untrue. As alleged in Plaintiff's Complaint, Defendants' use of *cameras* is conspicuous, FAC ¶ 35, but only upon arrival, and only after Plaintiff has already purchased tickets without material disclosures—that is, only after Plaintiff has been harmed.

Even the conspicuous presence of cameras at the venue is hardly proof that Defendants make their use of *facial recognition technology* known to Citi Field-goers, much less that the data will be stored for an indefinite period and could be used to bar patrons from returning to Citi Field. *See* FAC ¶ 38–39 (Citi Field visitors describing their experience of learning that facial recognition technology was being deployed against them online). Nor is Plaintiff's concern about the lack of express disclosures idiosyncratic: regulators warn that the use and collection of biometric information "pose significant risks to consumers" and require "clear disclosures and meaningful choices," because without them consumers cannot avoid those risks or unintended consequences. FAC ¶¶ 27–28. Rule 12(b)(6) affords Defendants no license to make the extraordinary leap that visible cameras mean visitors knew their biometrics were being scanned and stored; at this stage, reasonable inferences run to Plaintiff, not the other way around.[2]

---

[2] Defendants argue that Plaintiff has not adequately pled their conduct is materially misleading since it is not "deceptive or misleading to not obtain written consent for something known to Plaintiff and others." Defs.' Mem. at 13. That misstates the claim. The absence of written consent is only one of several factors. What matters is that Plaintiff's expectation of disclosure—before purchase or, at minimum, before entry—is reasonable.

In any case, even if Defendant's collection of biometric information *were* known to *all* visitors (it was not, *see* FAC ¶¶ 4, 38–39), that Defendants store and later use the collected biometrics remains entirely undisclosed. FAC ¶ 37. The FTC has also warned against such a practice given that consumers cannot "reasonably avoid[]" such collection and use absent express disclosures. FAC ¶¶ 27–28. Predictably, then, one online commentator was taken aback upon learning that Citi Field deployed facial recognition technology, when the supervisor of the park's security guard force told them that it was being used and that they had been banned from the park since 2008 (notwithstanding the fact that they had attended "a ton of games" since 2008). FAC ¶ 38.

Taken together, these allegations support the inference that a reasonable consumer would find Defendants' undisclosed use of facial recognition to be material, notwithstanding the mere visibility of cameras at the venue. Defendants' failure to disclose both their collection of biometric data from Citi Field users and *any* information as to its storage and use constitutes a materially misleading omission under GBL § 349.

### B. Plaintiff has adequately pled that he has been injured by Defendants' deceptive collection of his biometric information.

Plaintiff has alleged that he was injured by Defendants' deceptive collection of his biometric information because Defendant has gathered his valuable biometric information, without his knowledge nor compensation.

Plaintiffs must plead "actual" injury to state a claim under GBL § 349. While "monetary loss is a sufficient injury to satisfy the requirement under § 349," *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009), actual injury does "not necessarily

[involve] pecuniary harm," *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). A plaintiff "is directly injured when she pays a higher price than she otherwise would have paid based on her belief in the fact that is misrepresented." *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 99 (S.D.N.Y. 2022) (plaintiffs demonstrated actual injury under GBL § 349 by alleging they paid a premium they would not have paid if they knew the truth); *see also Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204, 220 (N.D.N.Y. 2024) ("it is well-established that paying a premium for a product can constitute an actual injury under GBL § 349").

When a plaintiff makes allegations based on a theory of price premium, "the injury requirement is satisfied by an allegation that a plaintiff overpaid for the product, or, stated differently, by a claim that a plaintiff paid a premium for a product based on the defendants' inaccurate representations." *Decoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 216 (N.D.N.Y. 2023) (internal quotation marks omitted). In addition, allegations that a plaintiff would not have purchased the product or would not have purchased it on the same terms if they had known the truth is sufficient to show actual injury at the motion dismiss stage. *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL), 2020 U.S. Dist. LEXIS 208861, at *31 (S.D.N.Y. Nov. 9, 2020).

Here, Plaintiffs can also allege non-monetary injury under GBL § 349. For instance, in *Zurakov v. Register.Com, Inc.*, a court determined that a plaintiff's allegations that "he was deprived of the essence of his bargain," which in that case was "the right to exclusive use of [an internet] domain name" sufficed to allege injury under § 349. 304 A.D.2d 176, 182 (1st Dep't 2003).

Plaintiff has alleged that he paid a "premium for security which is baked into the overall ticket price" when he bought tickets for events at Citi Field. FAC ¶ 4. Plaintiff also alleged that, if he knew his biometrics were being collected, stored, and used to bar certain Citi Field patrons from returning, "he either would have paid less for the tickets purchased or would not have purchased those tickets at all." FAC ¶ 4. These allegations suffice to establish Plaintiff's injury based a price premium theory, since they claim that Plaintiff would not have purchased tickets if he knew he was subsidizing the cost of Defendants' facial recognition technology or if he knew that attending an event at Citi Field would entail the unauthorized collection of his biometric information. *See Decoursey*, 673 F. Supp. 3d at 216. These allegations also suffice to show actual injury based on a theory that Plaintiff would not have purchased the product *at all* if he had known the truth about Defendants' use of facial recognition. *See Fishon*, 2020 U.S. Dist. LEXIS 208861, at *31.

In addition, Plaintiff has alleged that he was injured non-monetarily. As detailed in the complaint, biometric information has "intrinsic value"— particularly since it "cannot be changed or deleted." FAC ¶¶ 14, 21. The unauthorized collection of that information is itself an actual non-monetary injury cognizable under § 349. *See Zurakov*, 304 A.D.2d at 182.

II. **Plaintiff has stated a plausible claim that Defendants have benefitted from the use of Plaintiff and other class members' biometric information and their expense.**

Because Plaintiff has dismissed his claim under the New York Civil Rights Law, ECF No. 35, Defendants' claim that Plaintiff's unjust enrichment argument is preempted by his New York Civil Rights Law argument no longer applies. On the merits, Plaintiff has set forth a plausible unjust enrichment claim since he has alleged

Defendants have profited from the cost-savings created by their use of facial recognition technology instead of analog methods to ensure the security of visitors to Citi Field.

To succeed on an unjust enrichment claim in New York, a plaintiff must show: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal citations omitted).

Plaintiff has alleged facts that satisfy these elements. Defendants have benefitted from using facial recognition because it has allowed them to "ensure the safety and security of Citi Field patrons" at a discount. *See* Defs.' Mem. at 2. Instead of paying for an analog system by which security guards keep track of who has been barred from the stadium, Defendants have deployed facial recognition to recognize those who have been banned from the stadium and stop them from entering. FAC ¶ 40. Plaintiff and other members of the proposed class pay for this system when they buy a ticket to a game or event at Citi Field, and through the biometric information they involuntarily turn over. FAC ¶¶ 41, 45, 71–72.[3] In other words, Plaintiff and members of the proposed are paying for this system, passing cost savings along to Defendants and increasing their profit margin. FAC ¶ 40–41.[4] Allowing Defendants to retain the

---

[3] In *Mallouk v. Amazon.com, Inc.*, a federal district court declined to dismiss plaintiffs' claims of unjust enrichment based on allegations that defendant collected plaintiffs' biometric information for profit for plaintiffs that had failed to provide the pre-suit notice required by the New York City Biometric Identifier Information Law. No. C23-852-RSM, 2024 U.S. Dist. LEXIS 130027, at *17 (W.D. Wash. July 23, 2024).

[4] The allegations here are distinct from those in *Gross v. Madison Square Garden Entertainment Corporation*. There, a federal district court dismissed plaintiffs' allegations of unjust enrichment because they "fail[ed] to allege more than sheer possibility." No. 23-CV-3380 (LAK) (JLC), 2024 U.S. Dist. LEXIS 4904, at *27 (S.D.N.Y. Jan. 9, 2024). Here, in contrast, Plaintiff has specifically alleged how Defendants used

(continued…)

- 11 -

unjustified premiums they received from Plaintiff and members of the Class goes against "principles of equity." *Lake Minnewaska Mt. Houses v. Rekis*, 259 A.D.2d 797, 799 (3d Dep't 1999). Accordingly, Plaintiff has stated a claim for unjust enrichment.

## Conclusion

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

Dated: August 25, 2025

Respectfully Submitted,

By:  /s/ *Adam Pollock*
Adam Pollock
POLLOCK COHEN LLP
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Adam@PollockCohen.com

Jennifer Czeisler
jen.czeisler@sterlingtonlaw.com
Edward Ciolko
ed.ciolko@sterlingtonlaw.com
STERLINGTON, PLLC
530 Fifth Avenue, Suite 804
New York, NY 10036
 (212) 433-2995

Albert Fox Cahn
Surveillance Technology Oversight
Project (S.T.O.P)
40 Rector Street, 9th Floor
New York, NY 10006

*Counsel for Plaintiff*

---

his biometric information (and that of other class members) to enrich itself: by forcing visitors of Citi Field to pay for enhanced security monetarily and with their biometric information and profiting from the resulting cost savings.

## Certificate of Word Count

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1(c) because it contains 3,296 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

In making this calculation, I have relied on the word count of the word-processing system used to prepare this document, and I have included material contained in footnotes or endnotes.

Dated: August 25, 2025

POLLOCK COHEN LLP

By: /s/ *Adam Pollock*
Adam Pollock
111 Broadway, Suite 1804
New York, NY 10004
(212) 337-5361
Adam@PollockCohen.com
*Attorneys for Plaintiff*