UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS DOWLING, on behalf of himself and all others similarly situated,<br><br>                   *Plaintiff*,<br><br>    v.<br><br>QUEENS BALLPARK COMPANY, L.L.C. and DOES 1-10,<br><br>                   *Defendants*. | Case No. 1:24-cv-07092-KAM-VMS |

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
DEFENDANT QUEENS BALLPARK COMPANY, L.L.C.'S
<u>MOTION TO DISMISS</u>**

HUNTON ANDREWS KURTH LLP

Shawn Patrick Regan
Sarah F. Spellman
200 Park Avenue, 52nd Floor
New York, NY 10166
(212) 309-1046
sregan@hunton.com
sspellman@hunton.com

Neil K. Gilman (admitted *pro hac vice*)
Nicholas S. Drews (admitted *pro hac vice*)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1674
ngilman@hunton.com
ndrews@hunton.com

*Attorneys for Defendant
Queens Ballpark Company, L.L.C.*

## TABLE OF CONTENTS

                                                                                                              **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      ARGUMENT ................................................................................................................1

          A.      Plaintiff's Claim Under the NYC Biometrics Law Should Be Dismissed With Prejudice Because Plaintiff's Purported Withdrawal of Only One Claim Under Rule 41 is Ineffective and Plaintiff's Opposition Fails to Otherwise Address that Cause of Action ...................................................................................................1

          B.      Plaintiff's Unjust Enrichment Claim Must Be Dismissed. ......................................3

                   1.      Plaintiff's Unjust Enrichment Claim Is Pre-empted by the New York Civil Rights Law. ......................................................................................................3

                   2.      Plaintiff's Complaint Fails to State a Claim for Unjust Enrichment. ..........4

          C.      Plaintiff Does Not Allege a Plausible Claim Under GBL § 349 and It Must Be Dismissed. ...............................................................................................................5

II.     CONCLUSION ...........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 7, 9

*Ault v. J.M. Smucker Co.*,
   2014 WL 1998235 (S.D.N.Y. May 15, 2014) ............................................................ 6, 7

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020) .......................................................................................... 9

*Fero v. Excellus Health Plan, Inc.*,
   236 F. Supp. 3d 735 (W.D.N.Y. 2017) ......................................................................... 5

*Forties B LLC v. America West Satellite, Inc.*,
   2010 WL 2594297 (S.D.N.Y. June 18, 2010) ............................................................... 3

*Gross v. Madison Square Garden Ent. Corp.*,
   2024 WL 2055343 (S.D.N.Y. May 7, 2024) ......................................................... 1, 4, 5

*Republic of Colombia v. Diageo North America, Inc.*,
   2011 WL 4828814 (E.D.N.Y. September 20, 2011) .................................................... 3

*Sandoval v. Uphold HQ Inc.*,
   2024 WL 1313826 (S.D.N.Y. March 27, 2024) .................................................... 7, 8, 9

*Schuman v. Visa U.S.A. Inc.*,
   -- F.Supp.3d --, 2025 WL 1731795 (S.D.N.Y. June 23, 2025) ..................................... 7

*Sloan v. Anker Innovations Ltd.*,
   711 F. Supp. 3d 946 (N.D. Ill. 2024) ............................................................................ 7

*Thorpe v. City of New York*,
   No. 19-cv-05995 (CM) (RWL), 2022 WL 3112125 (S.D.N.Y. Aug. 4, 2022) ............. 2

*Zurakov v. Register.Com, Inc.*,
   304 A.D.2d 176 (1st Dep't 2003) .............................................................................. 7, 8

**Other Authorities**

Federal Rule Civ. P. 12(b)(6) ................................................................................................. 1

Federal Rule Civ. P. 15 .......................................................................................................... 2

Federal Rule Civ. P. 41 ............................................................................................... 1, 2, 3

Federal Rule Civ. P. 41(a)................................................................................................2

Federal Rule Civ. P. 41(a)(1)............................................................................................3

Federal Rule Civ. P. 41(a)(2)............................................................................................3

Defendant Queens Ballpark Company, L.L.C. ("QBC") respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiff's Corrected Amended Complaint (ECF 12) (the "Complaint"), pursuant to Federal Rule Civ. P. 12(b)(6).

## I.     ARGUMENT

**A. Plaintiff's Claim Under the NYC Biometrics Law Should Be Dismissed With Prejudice Because Plaintiff's Purported Withdrawal of Only One Claim Under Rule 41 is Ineffective and Plaintiff's Opposition Fails to Otherwise Address that Cause of Action.**

For more than a year, Plaintiff has continued to advocate a claim under the New York City Biometrics Law. The Biometrics Law claim was the focus of Plaintiff's original and subsequently amended Complaints. *See, e.g.,* ¶¶ 2-5, 30-32, 46, 50, 56-63. Plaintiff brought that claim notwithstanding that Judge Lewis Kaplan of the Southern District of New York had previously dismissed that claim (and all others) when brought by some of the very same attorneys originally involved here against Madison Square Garden ("MSG"). *See Gross v. Madison Square Garden Ent. Corp.*, 2024 WL 2055343, at *1-2 (S.D.N.Y. May 7, 2024) ("*Gross*"). And Plaintiff continued to advocate that claim vigorously through this Court's premotion process, *see* ECF 23, several court appearances, and months of information exchange directed by Your Honor aimed at possible resolution of the case. Plaintiff refused to voluntarily dismiss.

QBC was thus forced to bring this motion to dismiss. On the eve of filing his brief in opposition to QBC's motion to dismiss, Plaintiff finally acted: by filing a Notice of Voluntary Dismissal that purported to dismiss *only* the Biometric Law claim and to do so without prejudice. ECF 35. That filing, however, is contrary to the plain language of Rule 41.

Plaintiff's opposition brief tries in vain to whitewash Plaintiff's course of actions by stating that, "[u]pon careful consideration, Plaintiff has decided to dismiss Count I of his complaint which

alleged Defendants violated *the New York Civil Rights Law* [sic[1]]" and that Plaintiff accordingly has "filed a notice of dismissal of that count." *Opp.*, ECF 38, at 4, n.1 (citing ECF 35) (emphasis added). But Rule 41(a) allows for voluntary dismissal of only an entire *action*, not just select claims. Fed. R. Civ. P. 41 ("[T]he plaintiff may dismiss *an action* without a court order by filing … a notice of dismissal ….") (Emphasis added).

As Chief Judge McMahon recently explained in *Thorpe v. City of New York*, No. 19-cv-05995 (CM) (RWL), 2022 WL 3112125, at *1 (S.D.N.Y. Aug. 4, 2022), although "[t]he Second Circuit has not resolved the issue of whether the proper vehicle for a plaintiff's voluntary dismissal of *some* claims is Rule 15 or Rule 41(a), the Circuit has explained that both Rules are "subject to the same standard" so "the Court can allow a voluntary dismissal of certain claims pursuant to Rule 41 only as long as" the defendant is "not prejudiced thereby." *Id.* (cleaned up and citations omitted); *see also id.* (concluding "Plaintiff … cannot unilaterally discontinue some of his claims … without a court order [because] Rule 41 only permits dismissal of *actions* in their entirety" and defendant would be prejudiced by the Court permitting the dismissal without prejudice).

Here, dismissing Plaintiff's Biometrics Law claim without prejudice, at this point, would unduly prejudice QBC, and QBC thus respectfully requests the Court dismiss the Biometrics Law claim on the merits with prejudice. Plaintiff has pursued this claim for more than a year, under highly dubious circumstances, consumed months of pre-motion proceedings and numerous court conferences and filings, including extensive negotiation and applications for a protective order for information exchange. QBC's arguments on the Biometrics Law claim present purely legal issues,

---

[1] Further adding to the dysfunction, Plaintiff's opposition brief incorrectly refers to the claim it purported to dismiss as the New York "Civil Rights" Law claim. (*See* Opp. at 4, n.1.) Plaintiff's complaint does not assert a claim under the NY Civil Rights Law; Count I is a claim under the NYC Biometrics Law. (*See Compl.* ¶¶ 56-63).

2

as illustrated by the decision in *MSG*. Plaintiff had numerous opportunities to dismiss his Biometrics Law claim, but refused to do so until after QBC was forced to brief this motion.

Plaintiff's eleventh-hour, procedurally dubious, gambit is nothing more than a transparent attempt to preserve, without basis, the threat to bring that claim later — in a new suit before a different judge. Plaintiff's course of conduct has vexatiously increased the cost of litigation and a dismissal without prejudice would continue that threat.

For these reasons, and because Plaintiff has presented no basis for opposing dismissal nor could he do so, the Court should dismiss this claim *with prejudice*.[2]

**B. Plaintiff's Unjust Enrichment Claim Must Be Dismissed.**

    **1.** *Plaintiff's Unjust Enrichment Claim Is Pre-empted by the New York Civil Rights Law.*

Plaintiff's Opposition argues that, "[b]ecause Plaintiff has dismissed his claim under the New York Civil Rights Law [sic] … Defendants' claim that Plaintiff's unjust enrichment argument is preempted by his New York Civil Rights Law argument no longer applies." *Opp.* at 10 (citing ECF 35.)

Plaintiff's argument fails for at least two reasons. First, Plaintiff's argument misstates the claim he purported to voluntarily dismiss with his Rule 41 filing. Plaintiff never asserted a claim under the Civil Rights Law, nor is the cause of action that is the subject of Plaintiff's Rule 41 filing

---

[2] *Cf. Forties B LLC v. America West Satellite, Inc.*, 2010 WL 2594297, at *3 (S.D.N.Y. June 18, 2010) (rejecting procedurally improper Rule 41(a)(1) notice of voluntary dismissal, and subsequent alternative request to convert filing to Rule 41(a)(2) motion for voluntary dismissal without prejudice, where "plaintiffs lack a bona fide reason for attempting to withdraw this action at this juncture, and plaintiffs have offered none"); *Republic of Colombia v. Diageo North America, Inc.*, 2011 WL 4828814, at *3 (E.D.N.Y. September 20, 2011) (converting Rule 41(a)(2) motion for voluntary dismissal without prejudice to dismissal with prejudice where plaintiffs had "slim odds of reviving their claims" and allowing plaintiffs the option of continuing the action would "cost more legal fees and waste the court's time").

made under the Civil Rights Law.³  Second, and in any event, Plaintiff provides no legal authority (and there is none) for his broader misguided notion, which seems to be that a statute with preemptive effect operates to preempt a common law claim only when the Complaint also asserts a claim under that preempting statute. That, of course, is not the law and would make no sense because, if that were so, a plaintiff could avoid the preemptive effect of a statute and be able to maintain a common law claim by simply not also asserting a claim under the statute.  For these reasons, and the unrebutted reasons stated in QBC's opening brief, *see QBC Mem.*, ECF 37-1, at 8-10, Plaintiff's unjust enrichment claim is preempted by the New York Civil Rights Law and must be dismissed with prejudice.

### 2. *Plaintiff's Complaint Fails to State a Claim for Unjust Enrichment.*

Plaintiff argues that QBC was enriched at Plaintiff's expense because QBC was able to "ensure the safety and security of Citi Field patrons at a discount," which Plaintiff argues allowed QBC to "increase[e] [its] profit margin." *Opp.* at 11; *accord id*. n. 4 (arguing QBC provides "enhanced security" at a "cost savings" by using such technology); id. at 11 (arguing QBC "profited from the cost-savings created by their use of facial recognition technology instead of analog methods to ensure the security of visitors to Citi Field"); *id.* at 2 (arguing QBC "financial[ly] benefit[s]" from "reduce[d] security costs".)  The paragraphs of the Complaint Plaintiff cites speculate that, but for QBC employing biometric technology, QBC would have needed to employ more "manual labor" and incurred increased costs. *See Opp.* at 11 (citing Comp. ¶40, *et seq*). But this is indistinct from the theory Judge Kaplan rejected in *Gross*. *See* QBC Mem.

---

³ *See* ECF 35.  Plaintiff's misidentification of the cause of action that he purported to voluntarily dismiss is inexplicable.  It apparently is premised on a desire to setup and knockdown a strawman in response to the fact that Plaintiff's unjust enrichment claim is preempted by the New York Civil Rights Law.  *See* QBC Mem., ECF 37-1, at 8-10. But QBC's preemption argument never hinged, and does not hinge, on whether Plaintiff asserts a claim under the Civil Rights Law.

4

at 11 ("Plaintiff's conclusory allegations "do[] little to help bridge the gaps between [QBC's] collection of [his] biometric data and the alleged—but unsubstantiated—reduction in [QBC's] overall costs and profit increase." (quoting *Gross*).) While Plaintiff argues that "these allegations are distinct from those in *Gross*" because Judge Kaplan found the allegations there "failed to allege more than sheer possibility," *Opp.* at 11-12, n.4, there is no material difference between the "reduced costs" assertions advanced in *Gross* and what is advanced here.

Likewise, to the extent Plaintiff's Opposition argues that he satisfies the "at-Plaintiff's-expense" element because Plaintiff "involuntarily turns over" his biometric information or was "forc[ed]" to permit QBC to collect his biometric data, *Opp.* at 11 and 11-12, n. 4, QBC's opening brief addresses that issue. In short, any attempt to suggest that he was "involuntarily" subject to this system is wholly undermined by the fact that Plaintiff's Complaint does not (and could not) claim he was unaware that QBC uses technology that collects and uses biometric data. *See* QBC Mem. at 12 ("As a threshold matter it is important to note that Plaintiff does not claim that … he was unaware that QBC collects and uses facial recognition technology. Nor could Plaintiff make such a claim …."). Plaintiff's Opposition does not refute this.

QBC's motion, thus, should be granted with respect to the unjust enrichment claim.

**C. Plaintiff Does Not Allege a Plausible Claim Under GBL § 349 and It Must Be Dismissed.**

As to its GBL section 349 claim, Plaintiff argues that he satisfies the "materially misleading" element because "a reasonable consumer would not have known" that QBC uses facial recognition technology for security purposes. *Opp.* at 5. That argument is not supported by the cases cited in his opposition brief and is belied by facts in Plaintiff's own Complaint.

Plaintiff cites *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 775 (W.D.N.Y. 2017) as standing for the proposition that "[w]hether a particular act or practice is deceptive is usually a factual question." But *Fero* is inapposite. The Complaint there alleged that defendants

5

— who had suffered a cyber attack and data breach — had made affirmative misrepresentations about their "privacy policies and their websites concerning data security" which plausibly "would lead a reasonable consumer to believe that [defendants] were providing more adequate data security than they purportedly were." *Id*. at 776. Here, Plaintiff does not allege an affirmative misrepresentation but instead asserts that QBC "made a material omission in not disclosing their use of facial recognition technology[.]" *Opp*. at 7. And while Plaintiff argues that "[c]laims based on omissions are cognizable where the business alone possesses material information that is relevant to the consumer and fails to provide this information," *Opp.* at 5, Plaintiff's own Complaint here — as detailed in QBC's opening brief — "reflects widespread knowledge that QBC employs facial recognition technology at Citi Field" and thus certainly does not allege facts that, if true, would show Plaintiff lacked knowledge that QBC uses facial recognition technology. QBC Mem. at 14, 12, n. 4 (detailing how Plaintiff's own Complaint demonstrates widespread knowledge that biometric facial recognition technology is used at Citi Field, including for security purposes, and that its use is conspicuous).

Likewise, Plaintiff's citation of *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) — for the proposition that the question of "what a 'reasonable' consumer would have understood is a fact question," *Opp.* at 6 — is of no moment. *Ault* involved whether it was plausible for a reasonable consumer to have believed the affirmative statement "All Natural" on a Crisco Oil label meant the product did not contain GMOs or artificial ingredients. *Id.* at *1. The Court concluded that it could not find, as a matter of law, that it was not reasonable "for a consumer to believe that foods labeled as 'All Natural' do not possess GMOs", noting that even "the FDA has not developed a definition for the term 'natural' because of the 'complexities' of the factual inquiries involved." *Id.* at *6. In stark distinction, Dowling does not point to an affirmative

6

misrepresentation but instead asserts that QBC "made a material omission in not disclosing [its] use of facial recognition technology." *Opp.* at 7.

*Ault* does not change the fact that it remains Plaintiff's burden to set forth facts that, if true, render it plausible that he was misled, and that this standard "is an 'objective test' that 'may be determined as a matter of law or fact (as individual cases require)." *Sandoval v. Uphold HQ Inc.*, 2024 WL 1313826, at *6 (S.D.N.Y. March 27, 2024) (granting motion to dismiss § 349 claim). *See* QBC Mem. at 12 (citing cases). That plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And, as detailed in QBC's opening brief, QBC Mem. at 14, 12, n.4, Plaintiff's own Complaint belies any plausible claim that a reasonable consumer lacks knowledge that QBC uses facial recognition technology. *Accord Schuman v. Visa U.S.A. Inc.*, -- F.Supp.3d --, 2025 WL 1731795, at *12 (S.D.N.Y. June 23, 2025) (dismissing claim alleging "omissions … violated Section 349" where "numerous publicly available" sources cited in the Complaint showed "[p]laintiff could have reasonably obtained this information").[4]

As to the injury element of § 349, Plaintiff argues that "biometric information has 'intrinsic value'" and the "unauthorized collection of that information is itself an actual non-monetary injury." *Opp.* at 10 (citing *Zurakov v. Register.Com, Inc.*, 304 A.D.2d 176, 182 (1st Dep't 2003)). But *Zurakov* makes no mention of biometric data whatsoever, let alone that its collection constitutes a "non-monetary injury." *Zurakov* dealt with a claim that a domain registrar engaged

---

[4] *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 963 (N.D. Ill. 2024), cited by Plaintiff at *Opp.* 6, is similarly not germane. The plaintiffs there sued (under various states' laws) a home security system manufacturer who had advertised that the video data its system collected was encrypted, stored locally and available only to the customer, when, in fact, such data was uploaded to the cloud, not encrypted and was accessible to others. *Id.* at 954. It is unremarkable that the *Sloan* court declined to dismiss a claim setting forth specific, affirmative, material misstatements that were alleged to be precisely untrue. But Dowling's Complaint does not allege any affirmative misstatement by QBC.

7

to register a domain name for plaintiff, but that usurped that name, could be sued for a deceptive act under § 349. *Id.; see also Opp*. at 9 (acknowledging *Zurakov* involved only "an internet domain name").[5]

*     *     *

It is not plausible that a "reasonable consumer acting reasonably under the circumstances," *Sandoval,* 2024 WL 1313826, at *6, could maintain a claim for deception under the facts alleged here and given that the Biometrics Law includes a specific disclosure safe-harbor and a pre-suit notice-and-cure requirement.

Section 22-1202(a) expressly permits establishments to collect and use biometric data, so long as properly disclosed:

> Any commercial establishment that collects, retains, converts, stores or shares biometric identifier information of customers must disclose such collection, retention, conversion, storage or sharing, as applicable, by placing a clear and conspicuous sign near all … entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable.

And section 22-1203 expressly provides that, to the extent any consumer wishes to claim that a putative-defendant has failed to disclose such practices, that consumer must comply with a notice-and-cure period before bringing suit:

> At least 30 days *prior to initiating any action* … for a violation of subdivision a of section 22-1202, *the aggrieved person shall provide written notice to the commercial establishment setting forth such person's allegation*. If, within 30 days, the commercial establishment cures the violation and provides the aggrieved person an express written statement that the violation has been cured and that no further

---

[5] Plaintiff's arguments regarding its theories of alleged *monetary* injury fail for the reasons set forth in QBC's opening brief at 14-15.

> violations shall occur, *no action may be initiated* against the commercial establishment for such violation.

(Emphases added.)

Plaintiff, of course, does not allege that QBC failed to comply with section 1202(a), including the consumer disclosure safe-harbor, or that he ever provided QBC with pre-suit notice under 1203. He appears to believe that a plaintiff can ignore those provisions and simply sue under the General Business Law. The net effect of Plaintiff's theory would be to render meaningless the fact that section 1202(a) expressly permits use of biometric technology, its very specific disclosure terms, and section 1203's pre-suit notice-and-cure requirement.[6]

But, as the Second Circuit has explained specifically with respect to § 349, "context is crucial." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (affirming dismissal of § 349 claim). The "context-specific task" of the "plausibility" determination "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

It would defy common sense to conclude that a "reasonable consumer acting reasonably under the circumstances," *Sandoval, supra,* at *6, could plausibly claim to have been deceived based on the facts alleged here and could maintain suit under the generic section 349, when the Biometrics Law itself specifically provides a safe-harbor and a pre-suit notice requirement with which the putative plaintiff never even bothered to comply.[7] Plaintiff's section 349 claim must be dismissed.

---

[6] This patent tension is likely another reason Plaintiff tried to voluntarily dismiss its Biometrics Law claim.

[7] This theory is also specifically at the core of Plaintiff's argument that he satisfies the "injury" element of § 349 "because biometric information has intrinsic value" and its collection was "unauthorized." *Opp.* at 10.

9

## II. CONCLUSION

For the foregoing reasons, and those stated in QBC's memorandum of law in support of its Motion to Dismiss, and because any amendment would be futile, the Court should dismiss Plaintiff's Complaint with prejudice.

Dated: September 8, 2025

        Respectfully submitted,

By: *Shawn Patrick Regan*
    Shawn Patrick Regan
    Sarah F. Spellman
    200 Park Avenue, 52nd Floor
    New York, NY 10166
    (212) 309-1046
    sregan@hunton.com
    sspellman@hunton.com

    Neil K. Gilman (admitted *pro hac vice*)
    Nicholas S. Drews (admitted *pro hac vice*)
    2200 Pennsylvania Avenue, NW
    Washington, D.C. 20037
    (202) 955-1674
    ngilman@hunton.com
    ndrews@hunton.com

    *Attorneys for Defendant Queens Ballpark Company, L.L.C.*

## CERTIFICATE OF SERVICE

    I hereby certify that on September 8, 2025, I caused to be served a true and correct copy of the foregoing upon all counsel of record, by email:

TO:  Jennifer Czeisler*
    jen.czeisler@sterlingtonlaw.com
    Edward Ciolko*
    edward.ciolko@sterlingtonlaw.com
    **STERLINGTON, PLLC**
    One World Trade Center
    New York, New York 10004
    Tel.: 212-433-2995

    Adam Pollock
    Adam@PollockCohen.com
    Anna Menkova
    Anna@PollockCohen.com
    **POLLOCK COHEN LLP**
    111 Broadway, Suite 1804
    New York, NY 10006
    Tel.: (212) 337-5361

    Albert Fox Cahn
    **CAIR-NY**
    46-01 20th Avenue
    Queens, NY 11105
    albert@stopspying.org
    Tel.: (646) 665-7599

                /s/ *Shawn Patrick Regan*
                Shawn Patrick Regan

11

## **CERTIFICATE OF WORD COUNT**

      I hereby certify that the word count of this Reply Memorandum of Law complies with the word count limitation of Rule 7.1(c) of the Local Rules for the Eastern District of New York. In determining compliance, I relied on the word count function of the word processing system used to prepare this document. The total number of words in this Memorandum, exclusive of the caption, table of contents, table of authorities, and signature block is 3,510 words.

      /s/ *Shawn Patrick Regan*
      Shawn Patrick Regan