United States District Court
Eastern District of New York

-----------------------------------X

Chris Dowling, on behalf of himself and others similarly situated,

Plaintiff,

- against -

DOES 1-10, Queens Ballpark Company, L.L.C.,

Defendants.

-----------------------------------X

**Memorandum and Order**

No. 24-cv-7092 (KAM) (VMS)

**Kiyo A. Matsumoto, United States District Judge:**

Plaintiff Chris Dowling filed an Amended Complaint against Defendant Queens Ballpark Company, L.L.C. ("QBC") bringing claims under New York City's Biometrics Law (N.Y.C. Admin. Code § 22-1202(b)) ("NYC Biometrics Law") and New York General Business Law § 349 ("GBL § 349"), and asserting a claim for unjust enrichment.

Presently before the Court is QBC's motion to dismiss the Corrected Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, QBC's motion to dismiss the Corrected Amended Complaint is **GRANTED**.

## BACKGROUND

### I. Factual Background

In 2021, the New York City Council passed the NYC Biometrics Law which sought to regulate the use of facial recognition technology at entertainment venues. (ECF No. 12 (Am. Corrected Compl.) ¶¶ 30-31 .) Under the NYC Biometrics Law, "'[i]t shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information.'" (*Id.* ¶ 57 (quoting N.Y.C. Admin. Code § 22-1202(b)). The City Council noted its concern that "[i]t is unclear how the data collected through facial recognition technology is managed and stored by entertainment venues[,]" and further stated that experts had warned that "this data could be collected and sold to third parties for marketing purposes without the consent of consumers." (*Id.* ¶ 31.)

Citi Field is home to the New York Mets and hosts numerous events throughout the year. (*Id.* ¶ 2.) Dowling attended at least four Mets games at Citi Field the year prior to filing his lawsuit. (*Id.* ¶ 7.) While at these games, QBC collected Dowling's biometric identifiers (specifically, his facial biometric data) and did so without disclosing that they were collecting such information. (*Id.* ¶ 44-45.) QBC shared this biometric information with a third party, and did so for profit, "to save on security costs and to be able to charge a premium baked into event ticket prices with

respect to security." (*Id.* ¶ 45.)

## II. Procedural History

On September 5, 2024, Dowling filed the present action in the Supreme Court of the State of New York, Queens County, alleging violations of NYC Biometrics Law and GBL § 349, as well as a claim for unjust enrichment in a class action complaint, *Chris Dowling v. Sterling Mets, L.P. and DOES 1- 10*, Index No. 718313/2024. (ECF No. 1-2 (State Court Compl. at 15-17.) On October 8, 2024, the state court defendant removed the case to federal court. (ECF No. 1 (Notice of Removal).) Following discussion between the parties, Dowling filed an Amended Complaint substituting QBC as the named Defendant in this action.[1] (ECF Nos. 5 (Stip.), 9 (Am. Compl.), 12 (Corrected Am. Compl.).)

On January 13, 2025, this Court held a Pre-Motion Conference with the parties to discuss QBC's anticipated Motion to Dismiss. (ECF entry at 1/13/2025). "As discussed on the record, the Court indicated that Defendant has strong grounds to dismiss the complaint." (*Id.*)

On September 8, 2025, QBC moved to dismiss the Corrected Amended Complaint for failure to state a claim. (ECF No. 36 at 4.) Among other things, QBC argued that Dowling's unjust enrichment claim is preempted by New York Civil Rights Law §§ 50,

[1] The Court finds that the Plaintiff has adequately invoked the Court's subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). (ECF No. 12 ¶ 11.)

51. (*Id.* at 8.) "[C]ourts have long held that there is no common-law cause of action for misuse of personal images and the only remedy for such a claim is the one created by New York Civil Rights Law §§ 50, 51." (*Id.* at 9.)

On August 22, 2025, after being served with QBC's motion to dismiss, (ECF No. 36 at 3 (reflecting 7/21/2025 Service Date)), Dowling filed notice of voluntary dismissal of Count 1, his claim under NYC Biometrics Law. (ECF No. 35.)

Dowling opposes the motion to dismiss. (ECF No. 39 (Opp.)) He first notes that he decided to voluntarily dismiss Count I, and that he had reached out to QBC to seek a stipulation of dismissal, but that Defendant's counsel did not agree to this. (*Id.* at 4 n.1) Dowling also argues that because he voluntarily dismissed his NYC Biometrics Law claim, QBC's argument that his unjust enrichment claim "is preempted by his New York Civil Rights Law argument no longer applies." (*Id.* at 10-12.)

In reply, QBC argues that this Court should not allow Dowling to voluntarily withdraw his NYC Biometrics Law Claim because doing so would prejudice QBC: Dowling had numerous prior opportunities to dismiss and his pursuit of the claim until the "eleventh hour," vexatiously increased the cost of litigation, and a without prejudice dismissal would allow him to seek this same claim before a different judge. (ECF No. 40 at 1-3.) As to unjust enrichment, QBC asserts that Dowling's misidentification of the cause of action

he seeks to voluntarily dismiss is "inexplicable." (*Id.* at 4 n.3). Nevertheless, Dowling's unjust enrichment claim is preempted by New York Civil Rights Law regardless of whether Dowling asserts a claim under that statute. (*Id.* at 3-4.)

**LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.*

**DISCUSSION**

**I. Count 1: NYC Biometrics Law**

**a. Validity of Dowling's Notice of Voluntary Dismissal**

As an initial matter, the parties disagree on whether Dowling should be allowed to voluntarily dismiss his NYC Biometrics Law claim.

Federal Rule of Civil Procedure 41(a) permits dismissal in one of two ways: by unilateral notice if the opposing party has not yet served an answer or summary judgment motion, or by stipulation or court order. *See* Fed. R. Civ. P. 41(a)(1)-(2). Dowling seeks to dismiss his NYC Biometrics Law claim under Rule 41(a)(1)(A)(i). Rule 41(a)(1)(A)(i) provides that a "plaintiff may dismiss **an action** without a court order" by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.[2] (emphasis added). Dowling seeks to only dismiss one claim, not the entire action, bringing into question the applicability of Rule 41(a)(1)(A)(i).

Typically, the filing of a notice of dismissal under Rule 41(a)(1) serves to automatically terminate a case without any action by the Court. *See Thorp v. Scarne*, 599 F.2d 1169, 1171 n.1 (2d Cir. 1979) ("The law is settled that the filing of a notice of dismissal under Rule 41(a)(1)(i) automatically terminates the

[2] This Court concludes that Dowling's Rule 41(a)(1) motion is ineffective because it seeks only to dismiss one claim and not the entire action. It need not address the related question of whether Dowling's notice of dismissal was ineffective because he filed it after QBC served their Rule 12(b)(6) motion to dismiss. Briefly, Rule 41(a)(1)(A)(i) specifies that a notice of dismissal may not be filed after service of a motion for summary judgment, not a Rule 12(b)(6) motion. The Second Circuit has not addressed whether a motion to dismiss under Rule 12(b)(6) terminates the right to voluntarily dismiss, however, courts in this Circuit have consistently held that "a motion to dismiss under Rule 12 does not terminate the right of dismissal by notice," and thus a plaintiff may dismiss an action without a court order even if the defendant has already served a motion to dismiss. *See Ardnt v. UBS AG*, 342 F. Supp. 2d 132, 136 (E.D.N.Y. 2004) (alteration omitted) (collecting cases); *see also Lalli v. Warner Bros. Discovery*, No. 24-cv-03178, 2025 WL 357774, at *1 (S.D.N.Y. Jan. 31, 2025) ("A motion to dismiss is neither an answer nor a motion for summary judgment.").

lawsuit. No action by the court is necessary to effectuate the dismissal."). Therefore, if Dowling's notice of voluntary dismissal is valid, then that dismissal is self-executing.

"'The Second Circuit has not resolved the issue of whether the proper vehicle' for a plaintiff's voluntary dismissal of *some* claims, instead of the entire action, 'is Rule 15 or Rule 41(a).'" *Thorpe v. City of New York*, No. 19-cv-05995 (CM) (RWL), 2022 WL 3112125, at *1 (S.D.N.Y. Aug. 4, 2022) (quoting *Seidman v. Chobani, LLC*, No. 14-cv-4050 (PGG), 2016 WL 1271066 *2 (S.D.N.Y. Mar. 29, 2016)). While the text of Rule 41(a) speaks in terms of the dismissal of "an action," "the Second Circuit has vacillated as to whether Rule 41(a)" could be invoked to drop individual claims. *See Leifer v. Good Samaritan Hosp.*, No. 24-cv-7672 (KMK), 2026 WL 1948404 *5 (S.D.N.Y. July 2, 2026) (summarizing Second Circuit precedent.)

"[R]epeatedly, the Second Circuit has treated this question as one that need not be resolved 'since it is clear that a district court may permit withdrawal of a claim under Rule 15, subject to the same standard of review as a withdrawal under Rule 41(a).'" *Id.* (quoting *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985)). However, this reasoning has applied in cases where Plaintiffs sought Rule 41(a)(2) dismissals (requiring a court order), in contrast to the dismissal sought here, under Rule 41(a)(1), which would be effective immediately, and without the

Court's involvement.

In sum, if Dowling's notice of voluntary dismissal of Count I falls under Rule 41(a)(1)(A)(i), then the dismissal would be self-executing, and this Court could not reach QBC's arguments related to prejudice.

By its plain language, Rule 41(a)(1) applies only to the dismissal of an action, not a singular claim. Circuit Courts that have ruled on the issue have disallowed plaintiffs from voluntarily dismissing less than the entire action under Rule 41(a)(1). *See Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 720 (5th Cir. 2010) (ruling that, in the context of a Rule 41(a)(1) dismissal, "Rule 41(a) dismissal only applies to the dismissal of an entire action—not particular claims."); *Nelson v. Napolitano*, 657 F.3d 586, 588 (7th Cir.2011) (noting that "the purpose of Rule 41(a)(1) is to limit a plaintiff's ability to dismiss an action"); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005) ("In the specific context of Rule 41(a)(1), we have held that the Rule does not allow for piecemeal dismissals. Instead, withdrawals of individual claims against a given defendant are governed by [Rule 15]"); *Gov't Emps. Ins. Co. v. Glassco, Inc.*, 58 F.4th 1338, 1343 (11th Cir. Feb. 6, 2023) ("[R]ule 41(a)(1) permits voluntary dismissals only of entire actions, not claims." (quotation marks and citation omitted)).

Here, because Dowling seeks only to dismiss one claim from

his Amended Complaint, the Court concludes that he cannot voluntarily dismiss his claim under Rule 41(a)(1), and instead, will construe the notice of voluntary dismissal as a motion under Rule 15 to amend the complaint.

**b. Construed Rule 15(a) Motion to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure "[t]he court should freely give leave" to a party to amend its complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

QBC argues that Dowling should not be permitted to withdraw his NYC Biometrics Law claim without prejudice because he has "pursued this claim for more than a year," "consumed months of pre-motion proceedings and numerous court conferences and filings," and "QBC's arguments on the Biometrics Law claim present purely legal issues[.]" (ECF No. 40 (Reply) at 2.) QBC claims that the attempted withdrawal is a "transparent attempt to preserve, without basis, the threat to bring that claim later — in a new suit before a different judge," and asks that the Court dismiss the claim with prejudice. *Id.* at 3.

"While not much case law exists in this Circuit about what

constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith." *Franco v. Diaz*, 51 F. Supp. 3d 235, 245, (E.D.N.Y. Sept. 12, 2014) (cleaned up) (citing *Youngbloods v. BMG Music*, 07 Civ. 2394, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011)); *see State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 417-18 (2d Cir. 1990) (denying motion to amend where plaintiff sought strategic advantage by reserving certain claims until after court's choice of law determination).

Dowling does not provide any explanation for his decision to dismiss his New York Biometrics Law claim, suggesting that his primary concern is that the claim will fail. (*See* ECF No. 39 (Opp.) at 4 n.1 ("Upon careful consideration, Plaintiff has decided to dismiss Count I of his complaint which alleged Defendants violated the New York Civil Rights Law.")). The inference that Dowling seeks to dismiss Count I without prejudice to avoid dismissal by the Court is supported by the fact that Dowling filed his notice of voluntary dismissal only after receiving QBC's Motion to Sismiss. Moreover, in his opposition to the Motion to Dismiss, Dowling erroneously argues that "[b]ecause Plaintiff has dismissed his claim under the New York Civil Rights Law, ECF No. 35, Defendant's claim that Plaintiff's unjust enrichment argument is

preempted by his New York Civil Rights Law argument no longer applies."[3] (ECF No. 39 (Opp.) at 10-11.)

It appears that Dowling seeks to dismiss Count I to avoid this Court finding that his unjust enrichment claim was preempted (based on his misidentification of the cause of action and his misunderstanding of the law). Amendments of pleadings to withdraw claims in response to a motion to dismiss that is likely to prove successful are often encouraged for the sake of expediency and judicial efficiency. *See* Fed. R. Civ. P. 15(a)(1)(B) (providing for amendment as a matter of course following a 12(b) motion); *id.*, 2009 Advisory Committee Note ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim"). Here, however, it appears that Dowling did not seek to withdraw his claim to reduce the number of issues to be decided, but rather, to avoid this Court making an unfavorable preemption ruling.

Accordingly, this Court DENIES the construed-Rule 15(a) motion because of Dowling's apparent manipulation of the federal rules. *See Dass v. CUNY*, No. 18-cv-11325, 2024 WL 4986914, at *5 (S.D.N.Y. Dec. 5, 2024) ("where an amendment is made merely to gain a tactical advantage," amendment may be properly

[3] "[W]hether or not plaintiff chooses to bring such a claim does not affect the preemptive scope of the Civil Rights Law." *Schottenstein v. Wakefern Food Corp.*, No. 25-cv-8635 (LAK), 2025 WL 3442844, at *5 (S.D.N.Y. Dec. 1, 2025).

denied.)(quotation marks and citation omitted).

**c. Merits of Dowling's NYC Biometrics Law Claim**

Because this Court has determined that Dowling's construed-Rule 15 motion should be denied, it now considers the merits of the Dowling's NYC Biometrics Law claim.

Count I alleges violation of Section 22-1202(b) of the New York City Biometrics Law. Section 22-1202(b) makes it "unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." Dowling alleges that QBC violated the statute when it shared or sold the biometric identifier information with third parties. (ECF No. 12 ¶59.) Dowling continues that QBC "received both monetary (in the form of price premiums) and non-monetary (savings on physical security and additional safeguards which are then replaced with biometric surveillance) benefits in exchange for the biometric information." (*Id.* ¶ 60.)

Dowling does not allege that QBC profited from the *transaction* of this data it collects. And as noted by a court in the Southern District of New York, Section 22-1202(a), "explicitly *permits* the collection and sharing of biometric data for commercial purposes provided that the public is warned. If 'profit' were constructed to mean *any* benefit, then the only permissible commercial sharing of biometric data would be for applications that are not useful. " *Gross v. Madison Square Garden*, No. 23-cv-3380 (LAK) (JLC), 2024

WL 2055343, at *2 (S.D.N.Y. May 7, 2024).

Accordingly, because Dowling does not allege that QBC profited from the transaction of biometric data as required to state a claim under NYC Biometrics Law § 22-1202(b), Count I is DISMISSED.

## II. Count 2: New York General Business Law § 349

New York General Business Law Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To successfully assert a claim under this section, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (2012)) (internal quotation marks omitted).

QBC does not dispute, and therefore concedes for the purposes of this motion, that the conduct alleged here was "consumer-oriented." (*See* ECF No. 36-1 at 11-15.) QBC argues that Dowling has failed with respect to the second and third elements of a § 349 claim: that the conduct be materially misleading and that Dowling faced an injury as a result of this conduct. (ECF No. 36-1 at 11-14.)

**a. Materially Misleading**[4]

Dowling alleges that QBC violated GBL § 349 "by collecting Plaintiff and Class members' biometric data without written consent and did so in order to profit," and "because Plaintiff and many Class members were completely unaware of the full breadth of Defendants' conduct, including the use of their biometric identifier information for profit, they could not have avoided the harm caused by this conduct." (ECF No. 12 ¶¶ 66-67.)

"The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Orlander*, 802 F.3d at 300 ((quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741,745 (1995)). A claim based on a material omission, however, "must plausibly allege that the plaintiff could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" *Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 581 (S.D.N.Y. 2025) (quoting *Oswego Laborers*,

[4] The inquiry into whether a product is materially misleading may be decided as a matter of law. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). The Court notes, however, "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases); *see also Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) (noting that "in most cases the question of whether Defendant's labeling would prove misleading to the reasonable consumer is a question of fact that cannot be resolved on a motion to dismiss"). As explained below, deciding the materially misleading question is proper at this stage because of the Amended Complaint's pleading deficiencies.

647 N.E.2d at 745.).

Dowling does not plead that he could not reasonably have obtained the information regarding QBC's use of facial recognition technology. (*See* ECF. No. 12.) In fact, in his Amended Complaint, Dowling quotes a 2018 article about QBC's use of facial recognition technology at Citi Field. (*Id.* ¶ 34) ("Facial recognition technology is deployed through 11 cameras at the main fan entrance, and faces are checked against a blacklist."). Dowling also summarizes encounters on social media where "Mets fans have detailed the use of facial recognition by Citi Field which has been weaponized against them." (*Id.* ¶¶ 38-39.)

Dowling's Amended Complaint does not plausibly allege that Dowling could not reasonably have obtained the relevant information about QBC's use of facial recognition technology because the Amended Complaint itself cites publicly available information regarding QBC's use of facial recognition technology. *See Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 & n.16 (S.D.N.Y. 2003) (dismissing claim that McDonald's misleadingly omitted nutritional content from their food offerings because that "information [was] available to the public" and could be reasonably obtained). Accordingly, Dowling has failed to plead that QBC's conduct was materially misleading as required to state a GBL § 349 claim.

**b. Injury**

As to the injury prong, Dowling alleges that QBC inflated the cost of its tickets due to the elevated level of security, and, had Dowling known "that this premium price also included the surreptitious collection of their biometrics, they would have never paid premium prices (or bought a ticket to Citi Field at all)." (ECF No. 12 ¶ 41.)

In *Small v. Lorillard Tobacco Co.*, the New York Court of Appeals held that a plaintiff bringing a claim under GBL § 349 may not "set[ ] forth deception as both act and injury," such as where he relies solely on the allegation that he bought "a product that [he] would not have purchased, absent a manufacturer's deceptive commercial practices." 720 N.E.2d 892, 898 (1999). A plaintiff, may, however, "allege that, on account of a materially misleading practice, [ ]he purchased a product and did not receive the full value of h[is] purchase." *Orlander* 802 F.3d 289 at 302. One way to demonstrate this is to allege payment of a "price premium," whereby a plaintiff pays more than he would have but for the deceptive practice. *Id.*, 802 F.3d at 302.

Here, Dowling's Amended Complaint relies on his assertions that, had he known of QBC's allegedly deceptive practices, he would not have purchased tickets to Citi Field. Dowling does not allege he did not receive the full value of his tickets, nor does he allege what his expectation of the tickets would be. Consequently, Dowling has failed to allege sufficient facts to establish that he

received less than what he paid for when he purchased a ticket. *See Small*, 94 N.Y.2d at 56 (holding that an argument "that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349" is "legally flawed"); *see also Betzag v. BP Prods. N. Am. Inc.*, No. 23-cv-9602 (JMA) (ST), 2025 WL 1309848, at *7 (E.D.N.Y. Jan. 23, 2025) ("where a plaintiff merely believes []he was deceived into purchasing the product and spending what []he did, and there were no allegations related to the value of the purchased product, or how the product fell short of what it purported to be, GBL §§ 349 and 350 claims fail." ) (citation and quotations omitted). Dowling failed to plead an injury.

Accordingly, because Dowling fails to adequately plead all three prongs of his GBL § 349 claim, Dowling's GBL § 349 claim is DISMISSED.

**III. Count 3: Unjust Enrichment**

Dowling pleads an unjust enrichment claim. A court sitting in diversity applies New York choice of law rules. *See, e.g.*, *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). Under New York choice of law rules, unjust enrichment claims are governed by the jurisdiction with the "most significant relationship," here being New York given the location of Citi Field. *See, e.g.*, *Seibel v. Nat'l Union Fire Ins. Co. of*

*Pittsburgh, PA*, 655 F. Supp. 3d 212, 217 (S.D.N.Y. 2023) (citations and quotations omitted). The Court will therefore apply New York law.

New York courts have long recognized the New York Civil Rights Law as "preempt[ing] all common law claims based on unauthorized use of name, image, or personality, including unjust enrichment claims." *Zoll v. Ruder Finn, Inc.*, No. 01-cv-139 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004).

In applying these principles to a claim involving facial recognition technology, the Southern District of New York concluded that "facial recognition technology, . . . 'is a category of biometric technology that analyzes facial features to identify a person,'" and was therefore like an image or likeness and preempted by New York Civil Rights Law. *See Gross*, 2024 WL 103235, at *9. For these same reasons, this Court concludes that Dowling's claim for unjust enrichment as to QBC's use of biometric data is preempted by New York Civil Rights Law.

Even if not preempted, Dowling's unjust enrichment claim also fails on the merits.

Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: to prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience

require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (cleaned up) (citation omitted). The essence of an unjust enrichment claim "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381 (4th Dep't 1999)).

As to the first prong, Dowling alleges that "the visits to Citi Field enriched Defendants at Plaintiff's expense because it allowed Defendants to save on security costs and to charge an unjustified premium for the price of tickets to the venue." (ECF No. 12 ¶ 72.)

To state an unjust enrichment claim, a Plaintiff must plead facts showing that the defendant actually received a "specific" and "direct" benefit. *See Kaye*, 202 F.3d at 616 (unjust enrichment claim requires an allegation of a "specific and direct benefit" received by the defendant); *see also Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (2011) ("Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal.").

Here, like in *Gross*, Plaintiff does not "bridge the gaps between [Defendant's] collection of . . . biometric data and the alleged —but unsubstantiated —reduction in [Defendant's] overall

costs and profit increase based on its Policy. " *Gross v. Madison Square Garden Ent. Corp.*, No. 23-cv-3380 (LAK)(JLC), 2024 WL 103235, at *10 (S.D.N.Y. Jan. 9, 2024) report and recommendation adopted in relevant part 2024 WL 2055343 (S.D.N.Y. May 7, 2024). These "attenuated" allegations, "without more, are inadequate to support an unjust enrichment claim." *Id.*

Accordingly, even if not preempted, Dowling's unjust enrichment claim must be and is DISMISSED.

## IV. Leave to Amend

Dowling has already amended his Complaint once as a matter of course. (ECF No. 12 (Am. Compl.); Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course..."). It is in this Court's discretion to grant further leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). However, in line with the understanding that "[t]he court should freely give leave" to a party to amend its complaint, *id.*, the fact that Dowling has amended his complaint once before does not preclude the granting of leave to replead. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990) (holding that the district court erred in denying leave to replead even though the plaintiff had already amended his complaint once as a matter of course).

There is a strong preference to allow plaintiffs to amend

their pleadings, and this is particularly true if the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

Dowling has neither requested leave to amend nor indicated additional facts that would be added to the complaint. (*See* ECF No. 39 (Opp.)) And this Court had previously discussed the "strong grounds" QBC had to seek dismissal at the January 2025 conference. (*See* ECF entry at 1/13/2025.)

The dismissal of Dowling's Amended Complaint is therefore entered with prejudice and without leave to replead. *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 Fed. App'x 472, 474 (2d Cir. 2009) ("Given that [the plaintiff] did not move for leave to replead in opposition to [the defendant's] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, sua sponte, leave to replead.").

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's Corrected Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED.** Plaintiff's claims are hereby **DISMISSED** with prejudice. The Clerk of Court is respectfully requested to enter judgment in favor of Defendants and close this case.

**So ordered.**

Dated: September 24, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York